Eric JOHNSON, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (UNION CAMP CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 22, 1999.

Decided April 14, 2000.

---

Joan E. Lesnock, Washington, for petitioner.

Terry L.M. Bashline and Richard J. Trankocy, Jr., Pittsburgh, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Eric Johnson (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of the Workers' Compensation Judge (WCJ) that denied Claimant's claim petition. We affirm.

Claimant filed a claim petition on May 23, 1996 alleging that he was injured on March 28, 1996. Claimant was employed by Union Camp Corporation (Employer or Defendant) as a converting box shop trucker who, besides being a forklift operator, is also responsible for loading and unloading trucks and assuring that the plant's processing machines have sufficient material so as not to run out. Employer filed a timely answer denying all material allegations and raised the affirmative defense that Claimant's injury occurred as a result of his violation of Employer's positive orders or work rules and thus the claim is barred. The WCJ conducted hearings and took evidence. The facts as found by the WCJ are as follows.

Claimant had gone to a department of Employer's plant where he was not assigned any job tasks at the time in order to talk to Joe Monsour, a co-worker, for non-work related reasons. He wanted to talk to Mr. Monsour about Mr. Monsour's recent large consumption of hot wings. Claimant traveled to the department on his forklift and parked it near a conveyor. Claimant began talking to Mr. Monsour and Mr. Harold Hawkins. Along came Mr. Thomas Dykins on his forklift in order to get a load off the conveyor but he could

not get to it because Claimant's forklift was parked in the way.

Mr. Dykins testified that he asked Claimant to move the forklift several times and that he honked at Claimant but that Claimant did not move his forklift. Mr. Dykins explained that it was important that he remove the load from the conveyor so as not to cause problems further down the conveyor line. Mr. Dykins attempted to go around Claimant's forklift but bumped into it. Claimant testified that he was on his forklift at the time of the bump and was about to move it but that the bump caused Claimant to sustain neck and back pain. The WCJ found that Claimant

> denied that he got angry, although he admitted that he gave a recorded interview wherein he stated he saw red and yelled at the other employee [i.e., Mr. Dykins]: "I jump over on his ... truck and I had one hand on the mask and told him, come here, I want to ask you something, I want to know what your [expletive deleted] problem is." [Claimant] contended that he fell between the forklifts and sustained the injuries complained of.

WCJ's Finding of Fact (F.F.) No. 10.

Mr. Dykins testified that at the time he bumped into Claimant's forklift, Claimant was not on Claimant's forklift but was on the floor talking to Joe Monsour. As Mr. Dykins was backing up, he heard yelling, and discovered Claimant was pinned between Claimant's forklift and Mr. Dykins' forklift. Mr. Monsour testified and corroborated Mr. Dykins' version of the events. Mr. Monsour testified that when Mr. Dykins requested that Claimant move his fork lift, Claimant said, "[expletive deleted], I'm not moving." F.F. No. 13. Mr. Monsour further testified that Claimant was not on his forklift at the time Mr. Dykins bumped it. *Id.*

· Employer presented the testimony of Mr. Harold Hawkins. Mr. Hawkins testified that Mr. Dykins requested Claimant to move his forklift but that Claimant told Mr. Hawkins that he [Claimant] was not

going to move it. F.F. No. 14. Mr. Hawkins likewise testified that at the time Mr. Dykins bumped into Claimant's forklift, Claimant was not on his forklift. *Id.* Mr. Hawkins further testified that

> the part that I seen was when Eric [Claimant] had his truck parked there, and I heard Tom Dykins ask him to move his truck and what Eric had said. And I didn't see Eric get back on his truck at that time. And after he got back on, then Mr. Dykins was coming to get a load in, I seen Erik grab ahold [sic] of Tommy Dykins' truck. And at that time I yelled because I felt Tommy did not he [sic] him grab ahold [sic] of the truck, and I seen him get pinned in-between the truck. . . .

Hawkins Deposition, taken Dec. 16, 1996 at p. 10.

Employer also presented the testimony of Mr. Ernie Bedillion who is a supervisor at Employer's plant. He testified that it is a well known work rule that plant workers are to stay in their assigned work areas and that any worker engaging in a fight with another employee is subject to suspension including potential discharge. These work rules are posted on the plant bulletin board. There is also a work rule prohibiting horseplay. In addition, Employer presented the testimony of Mr. Ray Gravely, a general manager of the Union Camp plant. He sent a letter to Claimant indicating that Employer had determined that the injuries which Claimant sustained on March 28, 1996 were the result of his serious violations of plant safety and work rules and that a two-week suspension was appropriate. Mr. Gravely in his testimony went over the various plant work and safety rules that were violated by Claimant, including starting a fight, holding back production and engaging in horseplay.

■ The WCJ found the testimony of Messrs. Dykins, Monsour, Bedillion, Hawkins and Gravely to be credible and rejected the Claimant's testimony as not credible. F.F. No. 27. The WCJ found that

claimant was not in his proper work area, and was not on his forklift when Mr. Dykins bumped it and became angry at Mr. Dykins as a result of this bump. The credible evidence is that claimant then got on his forklift and intentionally jumped or lunged at Mr. Dykins['] forklift, in violation of numerous safety and workplace rules, and in the face of a clear hazard.... The testimony of Mr. Gravely on the claimant's violations of company policy is accepted as credible. It is found as a fact that it was the claimant's violation of clear company policy and safe workplace rules that caused his accident....

F.F. No. 27. Accordingly, the WCJ denied Claimant's claim petition finding that Employer had met his burden of proving that Claimant's injuries were caused by his violation of Employer's positive work rules. In addition, the WCJ found that Claimant was fully recovered from any work injury as of June 27, 1997. Claimant appealed to the Board which affirmed. Claimant now petitions this court for review.[1]

The first issue which Claimant raises is whether the WCJ properly applied the law to deny Claimant benefits for his injuries when he was injured on Employer's premises while he was engaged in the business of Employer. *See* Claimant's brief at p. 9.

 Injuries arising in the course of employment are generally compensable. *See City of New Castle v. Workmen's Compensation Appeal Board (Sallie),* 118 Pa. Cmwlth.51, 546 A.2d 132 (1988). The affirmative defense that a claimant's act violated a positive order or instruction of the employer is essentially a claim that the injury which a claimant sustained while so violating the employer's instructions was not an injury which arose in the course of employment. *See Nevin Trucking v. Workmen's Compensation Appeal Board*

*(Murdock),* 667 A.2d 262, 267 (Pa.Cmwlth.1995)("burden of proving that claimant's act was a violation of a positive order or instruction of the employer, **thus taking the claimant out of the course of employment,** is on the employer")(emphasis added, citing *City of New Castle* ). In order for the Employer to meet its burden, the Employer must prove that:

(1) the injury, was in fact, caused by the violation of the order or rule, *Walker v. Nu–Car Carriers, Inc.,* 164 Pa.Superior Ct. 246, 63 A.2d 484 (1949); (2) the employee actually knew of the order or rule, *Jenkins v. Glen Alden Coal Co.,* 126 Pa.Superior Ct. 326, 191 A. 227 (1937); and (3) the order or rule implicated an activity not connected with the employee's work duties. *Tappato v. Teplick & Eisenberg Co.,* 133 Pa.Superior Ct. 231, 2 A.2d 545 (1938).

*Nevin Trucking,* 667 A.2d at 268.

Initially, Claimant argues that Employer failed to prove that Claimant's actions in taking a few minutes to go and talk to his coworkers took the claimant out of the course of his employment. Claimant's brief at p. 13. Claimant also asserts that there was no proof that he was ever instructed that he could not go to parts of the plant where he had no work duties. *Id.* at 18. However, the failure with these arguments is that they miss the point. It is not the going into another part of the plant or even the talking to Mr. Monsour which caused the Claimant's injuries, it is Claimant's jumping on Mr. Dykins' forklift in anger to confront him. *See* WCJ's F.F. No. 23 ("The credible evidence is that claimant then got on his forklift and intentionally jumped or lunged at Mr. Dykins['] forklift, in violation of numerous safety and workplace rules, and in the face of a clear hazard.")

---

1. Appellate review over an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter),* 724 A.2d 407 (Pa. Cmwlth.1999).

■ Further, Claimant acknowledges that an injury is compensable "so long as there is nothing to show that the employee abandoned the course of his employment or was engaged in something wholly foreign to his work." Claimant's brief at p. 14–15. Claimant argues that in order for Employer to meet his burden of proving a violation of a positive work order, Employer must prove that Employer specifically instructed the Claimant not to engage in the activities which he engaged in. According to Claimant, the "word 'positive' to describe the orders and rules requires that the orders or rules be actually known and actually given in an instruction specifically to the employee as the court instructed in *Nevin.*" Claimant's brief at p. 15. In *Nevin,* a claimant was injured when he attempted to fix a tire on his truck in direct violation of a specific direction given to him that he not attempt to repair the tire. We held in *Nevin* that because the claimant violated the specific direction, the claimant was not entitled to benefits. However, just because in *Nevin* there was a violation of a specifically communicated direction does not mean that such is required in every case to meet the burden of proving that a claimant was outside the course of his employment. *See Dickey v. Pittsburgh & Lake Erie Railroad Co.,* 297 Pa. 172, 175, 146 A. 543, 544–45 (1929)(the Supreme Court pointed to an example where a violation of printed rules could constitute a violation of the employer's positive work rules such as to render the

claimant ineligible for benefits).[2] Thus, we reject Claimant's argument that just because Employer did not order him specifically not to jump on other people's moving forklifts in order to confront them, that Employer failed to prove that Claimant's conduct violated Employer's positive work rules.

■ Next, Claimant argues that there was no proof offered by Employer to support its burden of proving that Claimant actually knew of the positive work rule. We find however that the testimony of Mr. Bedillion and Mr. Gravely which the Employer offered did meet this burden. They testified that the rules were posted and that everyone knew those rules which included prohibitions on fighting and horseplay. Viewing this evidence in a light most favorable to the Employer as the party who prevailed before the factfinder and drawing all reasonable inferences from it as we are required to do, *Capuano,* we conclude that this testimony constitutes substantial evidence to support a finding that Claimant actually knew of these work rules and that the conduct he engaged in by jumping onto Mr. Dykins' forklift to confront him constituted a violation thereof. As there is substantial evidence of record to support a finding that Claimant actually knew of the work rules, we find that Employer did carry its burden under the second requirement and reject Claimant's argument to the contrary.[3]

2. Claimant also cites *Walker v. Nu–Car Carriers,* 164 Pa.Super. 246, 63 A.2d 484 (1949) in support of his claim that there must have been a specific order to the employee before a violation of a positive work rule can be established. What was said of *Nevin* applies as well to *Walker. Walker* does not establish a threshold requirement that the employee must have specifically been ordered not to engage in an activity so long as the claimant was made aware of the work rule as for example in *Dickey* where printed work rules were said to be sufficient.

3. In support of this argument Claimant relies upon *Jenkins v. Glen Alden Coal Co.,* 126 Pa.Super. 326, 191 A. 227 (1937). However,

*Jenkins* is distinguishable. In *Jenkins,* the compensation authorities found as a fact that notice to the claimant therein regarding work rules was not given to him or posted. The court in *Jenkins* stated that this was a question of fact for the Compensation Authorities. We agree. The question of fact herein was resolved against Claimant by the WCJ and because there is substantial evidence to support such a finding, it is binding on this court. *Capuano.*

Claimant also suggests that his conduct was not such as to take him outside the course of his employment just like the claimant's conduct in *Jenkins* was not sufficient to take him outside the course of his employment. In *Jenkins,* the claimant therein road a motor in

Next, Claimant argues that the third requirement was not met here. Claimant asserts that the Employer failed to prove that the work rule at issue implicated an activity not connected with the employee's work duties. As an initial matter, we note that the phrasing of this requirement is somewhat confusing. Reading *Tappato*, the case which *Nevin* cites as authority for this requirement, makes clearer the significance of this requirement. In *Tappato*, a young employee fell into an elevator shaft from a floor which he was not authorized to be on. The employer argued that because the employee had violated the work rule prohibiting him from going on this floor, the employee was outside the course of his employment. The court rejected employer's argument finding that compensation is not barred where "the employee's duties included the doing of an act which caused the injury, or where his duties were so connected with the act which caused the injury that as to it he was not in the position of a trespasser", citing *Dickey*.

The citation to *Dickey* provides a clue to the significance of this requirement. As noted above the Court in *Dickey* gave an example of acts in violation of positive orders which would bar compensation and acts which would not bar compensation. In *Dickey*, the Court gave the following example to illustrate the difference. The Court observed that where an engineer of a train runs a red light, this obviously violates a positive work rule but such violation does not bar compensation. In con-

trast, the Court pointed to a brakeman who has no duty to perform in regards to driving the engine, gets on the engine, starts it, drives it against the red light, and the Court concluded that such a violation would bar compensation. The Supreme Court explained that "injuries from those acts which are in direct hostility to, and in defiance of, positive orders of the employer concerning instrumentalities, places, or things about or on which the employee has no duty to perform, and with which his employment does not connect him are not compensable...." *Dickey*, 297 Pa. at 175, 146 A. at 544. Thus, the third requirement is that an employer must prove that the violation of the work rule was a violation similar to the violation where the brakemen gets on an engine and rides it, running a red light, something wholly foreign to his duties unlike the case of the engineer whose duty it is to ride the engine and who simply runs a red light.

Here we believe that Employer has met its burden. It cannot be denied that Claimant's actions of jumping on Mr. Dykins' fork lift to confront Mr. Dykins is something wholly foreign to Claimant's duties of driving his fork lift and loading and unloading trucks.

Accordingly, as the WCJ did not commit an error of law in determining that Employer proved that Claimant's actions violated Employer's work rules in such a way as to take the Claimant outside the course of his employment, we affirm the Board which affirmed the WCJ.[4]

order to get out of the coalmine but as he jumped from the motor, he broke his leg. The company rule in *Jenkins* prohibited all but three specified types of employees from riding the motor. The Court in *Jenkins* concluded that "the claimant in riding on the motor to get to the bottom of the shaft was not engaged in the commission of an act wholly foreign to his employment, going out of the mine was incidental thereto." *Jenkins*, 191 A. at 228. Here, however, we cannot conclude that Claimant's acts in jumping onto Mr. Dykins' forklift to confront him were incidental to Claimant's employment but rather we agree with the compensation authorities that these acts were wholly foreign to the

course of his employment. *See, e.g., Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas & Water)*, 124 Pa.Cmwlth.486, 556 A.2d 522, 524 (1989)(claimant's actions in going over to a car door and opening it and confronting the occupant were deviations from his employment and therefore "were wholly foreign to the scope of his employment.")

4. Claimant also argues that the WCJ erred in making a factual finding that the Claimant forfeited compensation as a result of his intentional self-inflicted injuries. Claimant challenges whether his injuries can be properly classified as intentionally self-inflicted.

## O R D E R

AND NOW, this 14th day of April, 2000, the order of the Workers' Compensation Appeal Board docketed at A98–1352 and April 2, 1999 is hereby affirmed.

However, as Employer points out this finding of intentional self-infliction of injuries is merely an alternative basis for the WCJ's denial of benefits. *See* Employer's brief at p. 12. Because we find that WCJ's denial of benefits was correct based on the Claimant's violation of a positive work rule of the Employer so as to remove Claimant from acting within the course of his employment, we do not need to reach the alternative grounds of the WCJ regarding Claimant's intentional self infliction of injury.