**Dennis CAMINO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY MISSION and MCRA, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 1, 2002.

Decided April 18, 2002.

system . . ."

Lawrence R. Chaban, Washington, for petitioner.

George Joseph, Erie, for respondent.

Daniel K. Bricmont, Pittsburgh, for amicus curiae, PA Trial Lawyers Assoc.

BEFORE: COLINS, President Judge, and COHN, J., and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Dennis Camino (Claimant) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Claimant's reinstatement petition. We vacate and remand.

Claimant filed a claim petition alleging that he was injured during the course of his employment on March 31, 1998. At the time of the injury, Claimant was employed by MCRA, Inc. and working, at the direction of MCRA, at City Mission. Claimant's original employer was the General Electric Co., but Claimant had apparently injured his hand during the course of his employment with that company to the extent that he was disabled from performing his duties there. Concentra Managed Care (Concentra) is a rehabilitation company that places injured workers back into the workforce. MCRA, on behalf of insurance companies and employers, is the employer of record for such injured workers. Claimant was one such worker, who was placed by Concentra in a funded position, at the request of General Electric, at City Mission to perform the duties of a launderer.

On March 31, 1998, Claimant sustained injuries to his back while mopping near a commode at City Mission during his regular working hours. MCRA and City Mission denied Claimant's request for workers' compensation benefits on the grounds that Claimant had been given a positive order not to do any mopping, that Claimant was injured while doing this prohibited activity, that mopping was not one of Claimant's duties, and that therefore Claimant was not within the scope of his employment when he was injured. The WCJ convened a hearing at which Claimant testified and presented the deposition testimony of Paul Diefenbach, M.D., and James Hayes of Concentra and Timothy Marshall of City Mission testified.

Claimant testified that when he began working at City Mission on March 16, 1998, he was given a list of a launderer's duties, which included sweeping the floor, dry mopping the floor, cleaning the bathroom, doing the windows, and mopping the floor. These duties were set forth in a document distributed to the residents of City Mission, who also were expected to perform household duties at the establishment. Claimant further testified that he reported to Mr. Marshall at City Mission, who told him that the mission would educate him on his duties. Mr. Marshall introduced Claimant to Tom, a resident at the mission, so that Tom could show Claimant what to do on his job. Claimant testified that Tom told him to start off doing the laundry, and in between laundry activity, Claimant was to strip beds, mop floors, and keep the place clean. Claimant did acknowledge, however, that Tom was not his supervisor, but he did not question Tom's instructions because he was originally told that Tom would instruct him on what to do.

Claimant testified that while mopping behind a commode on March 31, 1998, he felt something in his lower back when the mop handle hit the wall. He reported the incident to Mr. Marshall but did not seek medical attention until a week later, when, through Concentra, he was sent to Occupational Health. Claimant worked until April 27, 1998 washing and drying sheets, but did not mop in accordance with his current instructions. Claimant also testified regarding his condition and medical treatment, which included back surgery.

Mr. Marshall testified that he is the director of programs at the mission and that he was contacted by Mr. Hayes of Concentra to place Claimant in a light-

duty position if available. He testified that City Mission did not hire Claimant, that they did not pay Claimant, and that they did not have the authority to fire him. Mr. Marshall further testified that when Claimant first arrived at the mission on March 16, 2002, he informed Claimant that he had no other duties than to wash, dry, fold, and put away sheets. He also testified that he told Claimant that he was not to go into the showers or to wash the showers or mop the rest rooms, that the areas where there were showers and rest rooms were out-of-bounds to him, as was the dormitory area generally. He prepared a written job description for the launderer position for Concentra workers,[1] which description stated that, in addition to duties connected with washing "articles," a worker "[m]ay perform other duties within work capabilities." This document was mailed to Claimant by Mr. Marshall under a cover letter dated March 3, 1998, which letter stated that Claimant would be provided with "training for all duties required for [his] position." Claimant's Exhibit No. 5. Mr. Marshall was not aware that Tom had apparently given Claimant the form entitled "Skills Training for Program Residents" which listed the responsibilities of a "Laundry Man" as: "(a) wash and dry all bed linen; (b) strip and remake beds of men that left; (c) clean all restrooms and shower room second floor; (d) clean halls, dorm and gym; (e) assist in handling donations when needed; and (f) provide courteous service and be well groomed." Mr. Marshall testified that he had prepared this form for the residents, who were responsible for cleaning the showers, restrooms, and the dormitory, and for all vacuuming.

Mr. Hayes testified that he was a vocational specialist for Concentra and that he helped develop the job description for launderer for Concentra workers. He testified that he met with Claimant and Mr. Marshall on March 16, 1998 and went over the job analysis for Claimant very thoroughly. He testified that he and Mr. Marshall informed Claimant that he was not to mop, perform janitorial services, clean toilets, or have any responsibilities in the restroom areas. He was also not aware that Tom had given Claimant the Skills Training for Program Residents form. Mr. Hayes acknowledged that Claimant's injury at General Electric was to his finger and that his physician did not impose a restriction against Claimant mopping.

Dr. Diefenbach testified that Claimant had prior back surgery in 1989 for a herniated disc at L4–5, had done well after that, then experienced a 1990 work-related amputation in his right hand that developed into reflex sympathetic disorder. Claimant informed Dr. Diefenbach that he experienced a severe pain down his back and right leg after the incident at the mission, and that he became constipated and had difficulty urinating. An MRI revealed a large herniated disc at L2–3. Dr. Diefenbach diagnosed Claimant as suffering from cauda equina syndrome resulting from the herniated disc, a condition causing a compression of nerve roots. This condition results not only in radicular symptomology but can also cause difficulty with bowl and bladder function. Dr. Diefenbach determined that Claimant's condition constituted a surgical emergency. Surgery was performed which resulted in improvement in Claimant's leg pain, but Claimant continued to have weakness in his right leg and sphincter difficulty. Dr. Diefenbach

---

1. Prior to Claimant coming to the mission, another Concentra worker held the launderer position for a period of time.

opined that Claimant's condition and the resulting surgery was related to March 31, 1998 work incident.

The WCJ determined that the testimony of Mr. Marshall and Mr. Hayes was credible and persuasive. The WCJ also determined that the testimony of Claimant regarding his work instructions was less credible. Accordingly, the WCJ found that at the time of his injury, Claimant was violating a direct order not to mop or clean the restrooms and that mopping and cleaning restrooms was not within the scope of Claimant's work duties. The WCJ concluded that Claimant was not injured while in the scope of his employment and denied the claim petition. The Board affirmed, and this petition for review followed.

■■■ This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa. Cmwlth.307, 638 A.2d 477 (1994). The WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness in whole or in part. *Id.* So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.; Dancison v. Workmen's Compensation · Appeal Board (Penn Hills Senior High School Claims Management Services)*, 145 Pa. Cmwlth. 10, 602 A.2d 423 (1992), *petition for allowance of appeal denied*, 532 Pa. 666, 616 A.2d 987 (1992).

Claimant argues that the WCJ erred by concluding that Claimant was not in the course and scope of his employment at the time he was injured.[2] Claimant contends that in the rare cases where employees injured at the work place are denied benefits because they violated a positive work rule, they were also found to have been engaged in an activity so foreign to that which they were hired to do that they were essentially in the position of a trespasser at the time of injury. Claimant contends that he could hardly have been considered a trespasser at the time he injured his back and that mopping floors in a restroom is not so alien from his duties as a launderer, particularly when the Skills Training for Program Residents form includes such activity for launderers. Claimant points out that the individual who Mr. Marshall said would train him in his duties gave this form to him.

*Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995), is the seminal case where this Court applied the principle that an employee may be denied benefits if his or her injury arises from a violation of a positive order and which involves matters not connected with his or her terms of employment. In *Nevin Trucking*, the claimant, a truck driver, was injured when he attempted to change a tire on his truck. This act was in direct violation of a positive order from his employer, of which he was aware, not to change the tire. The claimant was instructed to take the truck to a facility where the tire would be changed. The claimant, however, had previously used the "road money" his employer had given him for such emergencies at a tavern the evening before the tire blew, and the claimant attempted to fix the tire himself.

We determined that under these factual circumstances, to claimant was not eligible

---

**2.** Claimant is joined in this review petition by the Pennsylvania Trial Lawyers Association, which has filed an *Amicus Curiae* brief. We have also considered the arguments raised in this brief, which mirror and augment the arguments raised by Claimant.

for workers' compensation benefits because he was injured as a result of a violation of a direct, positive order from his employer concerning a work area forbidden to him. We based our decision, in large part on *Dickey v. Pittsburgh and Lake Erie R.R. Co.*, 297 Pa. 172, 146 A. 543 (1929), wherein the Supreme Court denied workers' compensation benefits to the widow of a watchman who was killed by a railroad engine after he violated his employer's orders not to cross the railroad tracks between his stations, but to use a boardwalk constructed for that purpose. The Court noted the tension between the broad humanitarian principle of compensating all workers injured while on the job, regardless of their own negligent acts or willful disobedience concerning matters involving their work duties, and an employer's ability to control its workplace and guard against accidents by restricting activities of its employees or preventing them from entering dangerous areas or unnecessarily using dangerous instrumentalities. The Court stated:

Care must be taken not to confuse the principle enunciated with negligent acts ...., willful misconduct ...., or those acts in disregard of positive orders of the employer, where the employee's duties included the doing of the act that caused the injury, or where the duties were so connected with the act that caused the injury, that as to it he was not in the position of a stranger or a trespasser. The violation of positive orders under these circumstances does not prohibit compensation for injuries sustained therefrom.

However, injuries resulting from those acts which are in direct hostility to, and in defiance of, positive orders of the employer concerning instrumentalities, places, or things about or on which the employee has no duty to perform, and with which his employment does not connect him, are not compensable under the clause in question. As a concrete illustration, the railroads have printed rules and orders relating to the duties of their employees in the movement of trains. A violation of these rules by one whose duty it is to perform the function which they affect is not a violation [prohibiting compensation]. An engineer with a red signal against him runs his engine past it and is killed; the violation of the rule and the order, while willful, is a compensable negligent act. On the other hand, a brakeman who has no duty to perform on the engine gets on board, starts it, runs by the same block, and is killed; under [these circumstances] he cannot recover.

*Id.* at 175, 146 A. at 544 (citations omitted).

Based on *Dickey* and several Superior Court cases that followed it, we noted that a three-prong test sets forth the criteria for denying benefits to a worker injured as a result of disobeying an employer's order: "(1) the injury was, in fact, caused by the violation of the order or rule ....; (2) the employee actually knew of the order or rule ....; and (3) the order or rule implicated an activity not connected with the employee's work duties. ...." *Nevin Trucking*, 667 A.2d at 268 (citations omitted). In *Nevin Trucking*, we determined that the claimant was not eligible for benefits for an injury arising from his violation of a known order from his employer not to change the tire because "the changing of tires was not part of claimant's work duties nor connected thereto because performing repairs on such instrumentality was expressly prohibited by employer." *Id.* at 270.

More recently, we applied the principles in *Nevin Trucking* and *Dickey* in concluding that an injured claimant was not eligible for benefits in *Johnson v. Workers'*

Compensation Appeal Board (Union Camp Corp.), 749 A.2d 1048 (Pa.Cmwlth. 2000). In *Johnson,* the claimant violated a host of known rules and regulations when he drove his forklift to another work area (in violation of the employer's rules) and entered into an altercation with another forklift operator (in violation of the employer's rules prohibiting fighting and horseplay). We concluded that the employee's act of jumping from his forklift onto that of another driver (becoming pinned between the two vehicles as a result) was wholly foreign to his duties of driving a forklift and loading and unloading trucks. Therefore, we held that the claimant was not injured within the course of his employment.[3]

■ It must be remembered that these cases are the very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his or her employment and causally related thereto are compensable under Section 301(c)(1) of the Workers' Compensation Act (Act).[4] *See U.S. Airways v. Workers' Compensation Appeal Board (Dixon),* 764 A.2d 635 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 567 Pa. 753, 788 A.2d 382 (2001). Generally, a claimant suffers an injury arising in the course of employment when the claimant (1) is injured while actually engaged in furtherance of the employer's business or affairs, or (2) is injured on the employer's premises (even though not engaged in the employer's business or affairs) if the nature of claimant's employment requires his or her presence on the premises. *Hemmler v. Workmen's Compensation Appeal*

Board (Clarks Summit State Hospital), 131 Pa.Cmwlth.24, 569 A.2d 395 (1990). The phrase "actually engaged in the furtherance of the business or affairs of the employer" is given a liberal construction. *Id.*

■ Under these overarching principles, as established by statute, and the cautionary language used by the Supreme Court in *Dickey,* we must conclude that the WCJ erred by extending the holding in *Nevin Trucking* to the present case. First, we note that, pursuant to *Dickey,* in order to be ineligible for benefits, the employee must not only have been injured while in violation of an order, but must have been engaged at the time of injury in an activity so disconnected with his or her regular duties as to be considered, with respect to the employer, nothing more than a "stranger" or "trespasser." Not only must the injury arise out of the employee's engagement with "instrumentalities, places, or things about or on which the employee has no duty to perform," but also with matters with which the employee's "employment does not connect him" or her. *Dickey,* 297 Pa. at 175, 146 A. at 544.

Second, the Court indicated in *Dickey* that the narrow exception it was carving from the Act's general principles of compensating work injuries was based on the premise that an employer may guard against employee injury by restricting employees from *dangerous* areas or instrumentalities that have no connection with an employee's work duties. *See id.* at 176, 146 A. at 544.

---

**3.** *Nevin Trucking* and *Johnson* are the only identified cases of "modern" vintage that have applied *Dickey* to deny benefits to a worker injured while in violation of an employer directive. During the 1940s, several Superior Court cases applied *Dickey* for such

result, most of them involving workers injured while violating safety rules for coal miners.

**4.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

■ Here, Claimant was hired to perform the duties of a launderer and to "perform other duties within work capabilities." We agree with Claimant that it is extraordinary to conclude that Claimant, while mopping a restroom on the premises where he performed his work duties, was at that time a "stranger" or "trespasser." The janitorial-type activity of mopping and cleaning is not so foreign or disconnected from the duties of a worker who operated washers and dryers and placed away sheets as to render him or her a stranger or trespasser at the workplace, particularly where the duties of a resident launderer included mopping and cleaning. Moreover, Claimant, unlike the employees in *Dickey, Nevin Trucking,* and *Johnson,* was not injured while engaged in a matter of personal convenience or interest.[5] Mopping a restroom floor in a shelter for men is an activity that may safely be characterized as one for the benefit of the workplace and not for the worker performing the task. It is an activity that may safely be described as one pursued in furtherance of the business or affairs of the employer.

Also, there is no evidence that mopping, particularly as to Claimant, is a dangerous activity. Although Claimant was partially disabled from his regular employment, that disability concerned his hand, not his back or legs, and his doctor did not restrict him from mopping. Again, the violations in the *Dickey* line of cases involved employers' rules against activities involving dangerous matters completely unconnected with the employees' work duties. That is not the case here.

Further, while the WCJ found that Claimant was instructed not to mop, his findings of fact also established that Claimant was introduced to a resident for purposes of learning the particulars of his work duties. That resident apparently gave Claimant the "Skills Training for Program Residents" which listed, among the responsibilities of a "Laundry Man," the cleaning of all restrooms. Thus, while Claimant should, of course, have obeyed his supervisors, he was provided with conflicting instructions. Given the fact that the *Dickey* line of cases represents a very narrow exception to the remedial nature and broad, general principles of the Act, any doubts should be resolved in favor of applying the remedial provisions of the Act.

Even if Claimant did not receive conflicting instructions from the person who was designated to train him, the fact remains that he was injured while in furtherance of the interests of the workplace, acting in a manner not so alien to his regular duties as to characterize him as a "stranger" or "trespasser." Thus, the WCJ erred by concluding that Claimant was not injured while in the scope of his employment. Because, however, the WCJ made no findings of fact regarding the fact or extent of Claimant's disability, and their relation to the work injury, if any, this matter must be remanded to the Board for further remand to the WCJ to make these critical findings of fact and conclusions of law.

Accordingly, we vacate the Board's order and remand this matter for the WCJ's appropriate findings of fact and conclusions of law regarding Claimant's disability, if any, and its relation to the work injury, if any.

---

5. In *Dickey,* the employee was injured while taking a prohibited shortcut; in *Nevin Trucking,* the employee was injured while changing a tire because he had spent the money given him by his employer to have the tire repaired; and in *Johnson,* the employee was injured during a wholly private altercation with another employee.

## ORDER

AND NOW, this 18th day of April, 2002, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby vacated, and this matter is remanded to the Board for further remand to the workers' compensation judge to make findings of fact and conclusions of law regarding whether Dennis Camino is entitled to a reinstatement of his workers' compensation benefits consistent with the foregoing opinion.

Jurisdiction relinquished.