IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fine Arts Discovery Series, Inc.,　　:
　　　　　　　　　Petitioner　　　:
　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　:　No. 1000 C.D. 2021
　　　　　　　　　　　　　　　　:
Daniel Critton (Workers'　　　　　:
Compensation Appeal Board),　　　:
　　　　　　　　　Respondent　　　:　Argued: September 15, 2022

BEFORE:　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE ELLEN CEISLER, Judge
　　　　　　HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER　　　　　　　　　　　　FILED: October 20, 2022

　　　　Fine Arts Discovery Series, Inc. (Employer) petitions this Court for review of the August 19, 2021 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that awarded Daniel Critton (Claimant) benefits under the Workers' Compensation Act (Act).[1]  The issue before this Court is whether Claimant acted in violation of Employer's positive work order at the time he sustained a work injury and, as a result, whether he was injured outside the course of his employment.  After careful review, we affirm.

## I. Background

　　　　Claimant suffered a work injury on March 8, 2019, when he slipped and fell on ice while utilizing the rear entrance of a theater operated by Employer.  Certified Record (C.R.), Item No. 12, Notes of Transcript (N.T.), 5/10/19, at 8, 12.  Claimant filed a claim petition on April 3, 2019, alleging that he suffered a fractured left

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

humerus as a result of the March 8, 2019 work injury. C.R., Item No. 2. Employer denied liability for Claimant's injury on the basis that Claimant violated Employer's policy against entering the theater through the rear door and therefore Claimant's injury was not sustained in the course of employment. *Id.*, Item Nos. 4, 22. In support of his claim petition, Claimant testified live at a May 10, 2019 hearing before the WCJ. Employer presented the live testimony of four employees regarding its policy prohibiting the use of the rear entrance to the theater.[2]

Claimant testified that he worked for Employer 12-13 hours per week as a security guard, earning $12 per hour. N.T., 5/10/19, at 9-10. Claimant also worked 40 hours per week for ERG Staffing, at an hourly rate of $10.70. *Id.* at 11. Claimant advised that on March 8, 2019, he fell after slipping on snow-covered ice while walking towards the rear entrance of Employer's premises. *Id.* at 11-12. Claimant elected to use that entrance because he had to clock in at 5:30 p.m., and he would have been late to work had he walked around the block to use the front entrance. *Id.* at 12. Claimant reported the work injury to his supervisor, Jimmy Wells (Wells), and went to the emergency room, where he was treated for a fractured humerus. *Id.* at 14. During cross-examination, Claimant agreed that he attended a staff meeting on February 25, 2019; however, he did not recall receiving instructions at the meeting that employees should not use the rear entrance of the theater. *Id.* at 18. Claimant maintained that "everybody" who worked at the theater used the rear entrance. *Id.* at 36.

Casey Miller (Miller), one of Employer's security guards, testified that she and Claimant attended the February 25, 2019 staff meeting, during which Wells,

---

[2] Both parties presented medical testimony in support of their positions; however, because Employer has not raised a challenge to the WCJ's resolution of that evidence with this Court, we will not summarize it herein.

Employer's head of security, reminded staff that they should not use the rear entrance of the theater during winter. C.R., Item No. 13, N.T., 7/2/19, at 17-18. Miller advised that another employee required stitches after slipping at that location. *Id.* at 18. At a separate meeting of security personnel held later that day, which Claimant also attended, Wells reiterated that staff should not use the rear entrance. *Id.* at 20. Miller believed that instructions regarding staff use of the rear entrance were only relayed verbally, and she did not know whether a sign had been posted at the rear entrance, advising that it should not be used. *Id.* at 21. Miller stated that no penalty would be imposed for violating the policy against using the rear entrance, "other than you could seriously injure yourself." *Id.* at 22-23.

Nick Fantuzzi (Fantuzzi), Employer's accounting assistant and box office manager, was also present at the February 25, 2019 staff meeting. *Id.* at 24. Fantuzzi agreed that some staff, such as the stage crew, use the rear entrance to load equipment into the theater. *Id.* at 26. He acknowledged that "[t]here was no penalty" for using the rear entrance, it was simply "very dangerous going back through there." *Id.* at 27.

Wells testified that he advised staff at the February 25, 2019 meeting that the condition of the rear entrance was dangerous, as it did not get sun during the winter and that area was usually the last to be cleaned. *Id.* at 31. He did not discuss any consequences that might result from an employee's use of the rear entrance. *Id.* at 35. Wells agreed that an employee using the rear entrance would not be punished or terminated, or charged criminally, and he conceded that the rear entrance was not locked and that no signs were posted advising staff to not use that entrance. *Id.* at 34-35.

3

Catherine Berkowitz (Berkowitz), Employer's office manager and treasurer, testified that the February 25, 2019 staff meeting was held to discuss Employer's expectations and rules and regulations. *Id.* at 9. Berkowitz conceded that the rear entrance of the theater is used on occasion when loading equipment into the theater and that security personnel are sometimes stationed at that entrance. *Id.* at 14.

The WCJ circulated a decision on March 10, 2020, granting Claimant's claim petition. C.R., Item No. 5, WCJ Decision at 13. The WCJ found that Claimant was aware that Employer prohibited employees from using the rear entrance, based on the credited testimony of Employer's witnesses. *Id.*, Finding of Fact (F.F.) No. 7. In that regard, the WCJ rejected Claimant's testimony that he was not aware of Employer's work rule. *Id.* Otherwise, the WCJ found Claimant's testimony credible. F.F. No. 8.

The WCJ noted that the affirmative defense of violating a positive work order requires that an employer demonstrate that a policy existed, of which the claimant was aware, and that the claimant's violation of the policy removed him from the course of employment. Conclusion of Law (C.L.) No. 5. Although Employer demonstrated that it had a policy prohibiting use of the rear entrance of the theater, and that Claimant was aware of the policy, it failed to demonstrate that Claimant's use of the rear entrance removed him from the course of his employment. *Id.* The WCJ relied on the testimony of Employer's witnesses that Employer did not penalize employees who violated the policy, and that the rear entrance was unlocked, and no sign had been posted prohibiting its use. *Id.* Therefore, Claimant was entitled to workers' compensation benefits as of March 8, 2019, and ongoing. C.L. No. 7.

Employer appealed to the Board, arguing that Claimant's use of the rear entrance removed him from the course of employment. C.R., Item No. 6. Claimant

4

filed a cross-appeal, as the WCJ failed to determine the amount of Claimant's average weekly wage (AWW) or his corresponding rate of workers' compensation. *Id.*, Item No. 8. The Board affirmed the WCJ after concluding that Employer failed to demonstrate that Claimant's use of the rear entrance took him outside the course of his employment, as use of that door did not implicate an activity unrelated to his work duties. *Id.*, Item No. 10, Board Decision, at 8. The Board agreed, however, that the WCJ failed to determine Claimant's AWW and resulting compensation rate. *Id.* Accordingly, the Board remanded the matter to the WCJ to make such determinations.[3] *Id.* at 10. This appeal followed.[4]

## II. Issue

The sole issue before this Court is whether Claimant violated Employer's positive work order when he used the rear entrance of the theater, therefore removing him from the course of his employment at the time of his injury.

## III. Discussion

In a claim petition proceeding, the burden of proving all necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must establish that

---

[3] In a September 27, 2021 Motion to Quash Employer's petition for review, Claimant argued that the Board's order was interlocutory and not immediately appealable, given that it remanded the matter to the WCJ, who was directed to calculate Claimant's average weekly wage (AWW), an act requiring the exercise of discretion. This Court denied Claimant's Motion to Quash on October 21, 2021, after concluding that the WCJ was not required to exercise discretion in calculating Claimant's AWW, as the Board did not remand for further fact-finding. Rather, based on Claimant's existing credited testimony, the WCJ would apply the hours Claimant worked, or expected to work, to his corresponding salary to arrive at an AWW.

[4] This Court's scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Grill v. Workers' Comp. Appeal Bd. (U.S. Airways)*, 151 A.3d 697, 708 n.2 (Pa. Cmwlth. 2016).

5

his injury was sustained in the course of employment, resulting in a loss of earning power. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515-16 (Pa. Cmwlth. 2002). "Course of employment" does not include "an act contrary to the positive orders of the employer." *Dickey v. Pittsburgh & Lake Erie R.R. Co.*, 146 A. 543, 544 (Pa. 1929).

To assert the defense that a claimant was in violation of a positive work order at the time he sustained an injury, the employer must prove that (1) the injury was caused by the claimant's violation of the order; (2) the claimant actually knew of the order; and (3) the order implicated an activity that was not connected with the claimant's work duties. *Habib v. Workers' Comp. Appeal Bd. (John Roth Paving Pavemasters)*, 29 A.3d 409, 413 (Pa. Cmwlth. 2011) (internal citations omitted). An act that is in "direct hostility to, and in defiance of," an employer's positive order is not compensable. *Dickey*, 146 A. at 544. A denial of benefits based on a claimant's violation of a positive work order, however, is a "very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his or her employment and causally related thereto are compensable under Section 301(c)(1)[5] of the [Act]." *Camino v. Workers' Comp. Appeal Bd. (City Mission)*,

---

[5] Section 301(c)(1) of the Act relevantly defines "injury arising in the course of his employment" to include

> [a]ll other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the

**(Footnote continued on next page…)**

6

796 A.2d 412, 418 (Pa. Cmwlth. 2002). An act made in violation of a positive work order must be "so disconnected" with the claimant's regular work duties that he may be considered nothing more than a trespasser. *Sysco Food Servs. of Phila. v. Workers' Comp. Appeal Bd. (Sebastiabo)*, 940 A.2d 1270, 1274 (Pa. Cmwlth. 2008). An injury sustained in the performance of an act that is *connected to* a claimant's work duties is compensable, even if the act itself violates the employer's positive work order. *Dickey*, 146 A. at 544.

Employer argues that the WCJ improperly concluded that Claimant's use of the rear entrance to the theater did not remove Claimant from the course of his employment. Consequently, the Board erred in affirming the WCJ's award of benefits. Employer notes that Wells, Employer's head of security, specifically directed employees to not use the rear entrance due to dangerous winter conditions. Claimant was injured when he attempted to enter the theater by the rear entrance, in violation of Employer's order. Employer maintains that this act removed Claimant from the course of his employment, citing our Supreme Court's holding in *Dickey* and this Court's decision in *Miller v. Workers' Compensation Appeal Board (Millard Refrigerated Services and Sentry Claims Service)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012).

In *Dickey*, our Supreme Court upheld the denial of workers' compensation benefits to the widow of a decedent killed by a railroad engine while crossing the railroad tracks on a prohibited right-of-way. *Dickey*, 146 A. at 545. The decedent, who worked as a watchman, performed his duties at a carpenter shop located elsewhere on the employer's property. *Id.* at 544. The performance of decedent's

---

employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1).

7

duties did not encompass the railroad tracks or the right-of-way at which he was killed, and his employer had repeatedly instructed the decedent to access the carpenter shop by means of a boardwalk constructed for that specific purpose. *Id.* As injuries are not compensable under the Act when they result from activities undertaken "in direct hostility to, and in defiance of, positive orders of the employer [that concern] instrumentalities, places, or things about or on which the employee has no duty to perform, and with which his employment does not connect him," the Supreme Court held that the decedent's actions were outside the course of his employment, and thus not compensable. *Id.* at 544-45.

The Supreme Court cautioned, however, that a denial of compensation for acts contrary to the positive orders of an employer should not be conflated with acts that disregard positive orders but involve duties connected with a claimant's employment, such that "he was not in the position of a stranger or trespasser." *Id.* at 544. The violation of an employer's rule by the individual "whose duty it is to perform the function which [those rules] affect" was not an act that would render the resultant injury non compensable. *Id.* By way of example, the Supreme Court stated that an engineer who runs his engine past a red signal commits a compensable negligent act, whereas a brakeman who does not perform any duties on the engine but engages in the same activity cannot recover for any injuries sustained. *Id.* at 544-45.

The other decision cited by Employer, *Miller*, concerned a claimant injured while driving a forklift that he was not certified to operate. 47 A.3d at 208. We held that the claimant was properly denied compensation under the Act because he was injured while driving the forklift in violation of his employer's work rule, the

8

claimant was aware of the work rule, and driving the forklift was not an activity connected with the claimant's work duties. *Id.* at 209.

Other decisions of this Court indicate that the activity associated with the violation of a positive work order must be clearly unconnected with a claimant's work duties before compensation for an injury may be denied. The claimant in *Habib*, for example, was a laborer who sustained an injury to his eye after using a sledgehammer to hit a bowling ball he found near the job site at which he worked. *Habib*, 29 A.3d at 410. We affirmed a WCJ's decision denying the claimant compensation where the claimant's supervisor had explicitly instructed him to stop performing the activity that caused his injury and the activity, smashing a bowling ball with a sledgehammer, was clearly not connected to the claimant's work duties as a laborer. *Id.* at 414.

In *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262, 269 (Pa. Cmwlth. 1995), this Court concluded that a claimant injured while changing a tire was properly denied benefits where his employer had a policy that prohibited drivers from performing their own repairs, the claimant was aware of the policy, and the claimant had no duty to repair the tire and his employer specifically instructed him to have the repair made at a professional tire shop.

We came to the opposite conclusion in *Camino*, in which we emphasized that cases in which a claimant is denied benefits for violating a positive work order represent "the very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his or her employment and causally related thereto are compensable under Section 301(c)(1) of the [Act]." *Camino*, 796 A.2d at 418. To deny benefits, the injury must not only "arise out of the employee's engagement with 'instrumentalities, places, or things about or on which the

9

employee has no duty to perform,' but also matters with which the employee's 'employment does not connect him[.]'" *Id.* (citing *Dickey*, 146 A. at 544). We noted that the narrow exception outlined in *Dickey* was "based on the premise that an employer may guard against employee injury by restricting employees from *dangerous* areas or instrumentalities that have no connection with an employee's work duties." *Id.* We opined that the janitorial work of mopping a floor was not so "foreign or disconnected from the duties of a [launderer,]" the position for which the claimant was hired. *Id.* at 419. Moreover, the claimant was not injured while performing a dangerous activity, or one undertaken for his own personal convenience or interest; rather, he received conflicting information regarding the extent of his work duties. *Id.* Ultimately, we concluded that the claimant was injured while furthering the interests of his employer and while acting in a manner that was not so alien to his regular duties that he could be characterized as a stranger or trespasser. *Id.*

*Asplundh Tree Expert Company v. Workers' Compensation Appeal Board (Humphrey)*, 852 A.2d 459, 461 (Pa. Cmwlth. 2004), involved a claimant injured while performing his work duties in a manner that violated his employer's safety rules. We likened the circumstances of the claimant's injury to that of the hypothetical train engineer in *Dickey* who commits a compensable negligent act. *Id.* at 462. The claimant in *Asplundh* was similarly injured while performing an activity connected with his work duties; as a result, we affirmed the Board's order affirming the WCJ's award of benefits under the Act. *Id.* at 463.

Having reviewed the facts in this matter, and the precedent discussed herein, we find no error in the Board's order affirming the WCJ. While instructive, the facts in *Dickey* are sufficiently distinguishable that we cannot consider that matter

10

dispositive.  In *Dickey*, the decedent's duties were entirely unconnected to the train tracks and right-of-way where he was killed.  Instantly, Employer has not specified how Claimant's use of the rear entrance versus the alternate entrance in the front has so removed him from his duties as a security guard that the activity should render him a "stranger or trespasser." *Dickey*, 146 A. at 544.  It is worth noting that one of Employer's witnesses, Berkowitz, testified that security personnel are occasionally stationed at the rear entrance of the theater, and Employer presented no evidence that Claimant's duties as a security guard did not encompass this location.  Consequently, it cannot be said that the rear entrance to the theater was a location at which Claimant had no duty to perform and his presence there could be likened to that of a stranger or trespasser.  Rather, at the time of his injury, Claimant was simply attempting to access the building to begin his work duties. It cannot be said that such an activity is so disconnected from Claimant's job duties that he was removed from the course of employment when he was injured.  Moreover, the remedial nature of the Act weighs in favor of awarding compensation. *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524 (Pa. 2003).

     For the reasons set forth above, we affirm the Board.

 

_____

ELLEN CEISLER, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fine Arts Discovery Series, Inc.,    :
               Petitioner    :
                            :
          v.               :   No. 1000 C.D. 2021
                            :
Daniel Critton (Workers'      :
Compensation Appeal Board),   :
               Respondent   :

# **O R D E R**

AND NOW, this 20th day of October, 2022, the August 19, 2021 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge