**SYSCO FOOD SERVICES
OF PHILADELPHIA,
Petitioner**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (SEBASTI-
ANO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 2007.

Decided Jan. 23, 2008.

Francis Moritz, Philadelphia, for petitioner.

Vasil L. Kirifides, Media, for respondent.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Sysco Food Services (Employer) petitions for review from an Order of the Worker' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting a Claim Petition filed by Anthony Sebastiano (Claimant). We affirm.

On May 3, 2004, Claimant filed a Claim Petition alleging he sustained an injury to his left ankle and leg in the course and scope of his employment on April 1, 2004. Claimant amended his Petition to include a request for benefits for an injury to his low back as well as reflex sympathetic dystrophy.

In support of his Petition, Claimant testified that he was employed as an Order Selector and that as part of his duties he would go around the warehouse, select boxes, and put them on pallets. He stated that on April 1, 2004, he was in the Cold Dock and went to get some shrink wrap. He explained that as he was walking, he was grabbed from behind by Mark DeFranciso who shouted "Let's get him." According to Claimant, Roberto Cannistraci grabbed him from the front, hugging his arms so he could not move, and attempted to trip him. This individual pulled Claimant across the floor. Claimant stated he asked him to stop. At that time, someone came by on a pallet jack, beeped the horn at them, and told them to get out of the way. Claimant asserted that Mr. Cannistraci let him go and "as I was turning

around to walk away I felt someone collide into me. I fell onto the ground and I looked up and Roberto was on top of me and I heard a loud crack as I was falling." Claimant was taken to the hospital. He acknowledged that horseplay was prohibited by Employer and that it is a punishable offense. Claimant stated that he was not a participant in the horseplay, but rather a victim of it.

Employer presented the testimony of Roberto Cannistraci, an Order Selector, who explained that on the evening of the incident in question he was joking around with Claimant. He asserted that they began pushing each other. He stated that they became locked in with one another and fell to the ground. He acknowledged that the fall may have occurred due to their reactions to hearing the horn. Mr. Cannistraci said he did not intend to harm Claimant. Mr. Cannistraci was out of work for about a month but returned following the completion of investigation done by Employer.

Employer further presented the testimony of Mark DeFranciso, Night Selector, who stated that he observed Claimant and Mr. Cannistraci joking around and pushing each other. He conceded he may have grabbed and/or pushed Claimant in the moments leading up to his fall. He explained that thereafter, he proceeded to walk towards a computer when he heard a loud noise. He turned and observed Claimant and Mr. Cannistraci on the ground. Mr. DeFranciso stated that this incident was not an attack on Claimant, but rather fun and games that had bad consequences.

Employer also presented the testimony of Khalif Nelms, Order Selector, who, on April 1, 2004, was putting empty labels away when he observed Claimant and Mr. Cannistraci engaged in a wrestling match. He said the whole incident lasted approximately ten minutes until both individuals fell backwards and Claimant screamed in pain. He acknowledged people have joked around in the past. According to Mr. Nelms, the fork lift did not come by until the fall had already occurred. Michael Heiner, director of human resources at the time of Claimant's injury, also testified on Employer's behalf. He stated that he heard about the incident where Claimant injured himself the following day. He said that after speaking with multiple individuals, he determined that both Claimant and Mr. Cannistraci were involved in mutual horseplay and that there was not an unprovoked attack. Mr. Heiner was asked if Claimant came back to work, would he have to undergo the same investigation and punishment that Mr. Cannistraci underwent. He responded, "Yes, he would."

Employer submitted an Employee Statement that was completed by Claimant on April 2, 2004 that indicates:

Roberto tripped and fell onto me causing me to fall backwards. We fell and my leg was caught under me and I heard a snap. I could not move, too much pain.

Employer further submitted a Witness Statement signed by Claimant dated April 21, 2004 that reads:

Roberto Cannistraci came from a metal desk near the freezer doors and grabbed me. Mark let go of me and Roberto tried to trip me and/or otherwise wrestle me to the ground ... My injury was the sole result of Roberto Cannistraci trying to wrestle me to the ground ...

In a Decision circulated June 29, 2006, the WCJ granted Claimant's Claim Petition finding he met his burden of proving, based on medical evidence submitted that is not crucial to the disposition of this case, that he sustained disabling injuries in the course and scope of his employment. She granted total disability beginning April 2,

2004. The WCJ rendered the following dispositive analysis:

> This Workers' Compensation Judge has reviewed Claimant's testimony and finds him credible and persuasive that he suffered disabling work-related injuries in the nature of a fractured left ankle, as well as injuries to the lumbar spine, low back and reflex sympathetic dystrophy. I conclude that Claimant was the victim of horseplay and was not an active participant in it. Employer never disciplined Claimant for his actions and he was never charged with a violation of a work rule. I note that Mr. Nelms, Mr. DeFrancisco, and Mr. Cannistraci credibly testified to the commonplace nature of the horseplay at Employer's warehouse and that no one intended to harm or assault Claimant. It was Employer's responsibility to control the conduct and behavior of its employees.

Employer appealed this Decision to the Board. It affirmed in an Order dated March 27, 2007. This appeal followed.[1]

Employer argues before us that the WCJ erred in granting Claimant's Claim Petition because he was injured while violating a positive work order prohibiting horseplay. Moreover, it contends that the WCJ failed to use the correct legal analysis in determining whether Claimant should be precluded from receiving benefits due to the fact that he sustained his injury while violating a positive work order. It asserts that the proper test is to determine whether horseplay was a violation of the Employer's work rule, whether Claimant was aware of the work rule, and whether the injury arose from a violation of the work rule. Employer contends that

there is no legal basis to ignore Claimant's violation of a positive work order and award benefits simply because he was not punished for the violation. This fact notwithstanding, Employer cites Mr. Heiner's testimony that Claimant was not disciplined because he has not yet returned to work. Additionally, Employer challenges that the WCJ's rationale that "[i]t was Employer's responsibility to control the conduct and behavior of its employees" is of no legal value and is not a proper analysis.

Section 301(c)(1) of the Pennsylvania Workers' Compensation Act [2] (Act), 77 P.S. § 411(1), provides in pertinent part:

> (1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto ... The term "injury arising in the course of his employment ..." shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

---

1. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Degraw v. Workers' Compensation Appeal Board (Redner's Ware-*

*house Mkts., Inc.)*, 926 A.2d 997 (Pa.Cmwlth. 2007).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

In a claim petition, the burden of proving all necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). Under Section 306(c)(1) of the Act, an employee may obtain workers' compensation benefits if he is injured while actually engaged in the furtherance of the employer's business or affairs. *Kmart Corp. v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000). When an employee is actually engaged in the furtherance of his employer's business or affairs, he will be considered to be acting in the course and scope of his employment. *Heverly v. Workmen's Compensation Appeal Board (Ship N Shore)*, 134 Pa.Cmwlth.110, 578 A.2d 575 (1990). When a claimant is injured on the employer's premises by the act of a co-worker, there is a rebuttable presumption that the claimant is covered by the Act. *General Elec. Co. v. Workmen's Compensation Appeal Board*, 50 Pa. Cmwlth. 45, 412 A.2d 196 (1980). Moreover, injuries that arise out of horseplay have been found to be compensable. *Id.* at 198. *See also Sinko v. Bethlehem Steel Co.*, 104 Pa.Super. 357, 159 A. 230 (1932). Whether an employee is within the course and scope of his employment when an injury occurs is a question of law to be determined based on the factual findings made by the WCJ. *Thomas Jefferson Univ. Hosp. v. Workmen's Compensation Appeal Board (Cattalo)*, 144 Pa.Cmwlth. 302, 601 A.2d 476 (1991).

An employer may raise the affirmative defense to a claimant's claim for benefits that his actions violated a positive work order and that therefore his injuries were sustained outside the course and scope of his employment. *Johnson v. Workers' Compensation Appeal Board (Union Camp Corp.)*, 749 A.2d 1048 (Pa. Cmwlth.2000). The defendant has the burden of proving that the claimant's ac-

tions were in violation of a positive work order. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995). The employer must prove that the injury was in fact caused by the violation of the work rule, the employee actually knew of the order or rule, and the rule implicated an activity not connected with the employee's work duties. *Johnson*, 749 A.2d at 1051. Denying benefits based on the violation of a positive work order is a very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his employment and causally related thereto are compensable under Section 301(c)(1) of the Act. *Camino v. Workers' Compensation Appeal Board (City Mission)*, 796 A.2d 412 (Pa.Cmwlth. 2002). Indeed, the claimant must have been involved in an activity at the time of his injury in an activity so disconnected with his regular work duties as to be considered, with respect to the employer, nothing more than a "stranger" or "trespasser." *Id.* at 418.

Based on our review of the relevant legal authority, we note that the WCJ's analysis finding Claimant entitled to benefits leaves a lot to be desired. Pursuant to *Johnson*, in analyzing the compensability of a work place injury sustained while violating a positive work order, the WCJ must determine whether the employer met its burden of proving that the injury was caused by the violation of the work rule, the employee actually knew of the rule, and the rule implicated an activity not connected with the employee's work duties. The WCJ's statement that "Claimant was the victim of horseplay and was not an active participant in it" is sufficient to conclude Employer failed to satisfy the first prong and that his injury was caused by the violation of a work rule. If he did not choose to engage in the horseplay and

was innocent of any wrongdoing, how could it be said that he violated the rules of his Employer? Of course, this begs the question of whether Claimant truly was an unwilling participant. Although Claimant testified that he did not want to engage in the horseplay and asked Mr. Cannistraci to stop, other witnesses indicated that the two were mutually engaged in the rough-housing. The WCJ failed to address this inconsistency in her Decision. Moreover, while the WCJ's finding that Claimant was never charged with violating a work rule can be read as further support for a determination that he was an unwilling participant in horseplay, she also failed to explain why she relied on this fact despite Mr. Heiner's statement that if and when Claimant returns to work, he would be subject to disciplinary action just like Mr. Cannistraci.[3]

Notwithstanding the shortcomings, we do not believe a remand is necessary to resolve any inconsistencies or for further findings of fact and conclusions of law. In the present case, Claimant acknowledged that he was aware of Employer's work rule prohibiting horseplay. Moreover, whether Claimant was a "victim" of horseplay or a mutual participant in the rough-housing, there is no dispute that Claimant's injury occurred as a result of horseplay. The real question is, pursuant to *Camino*, whether the act of horseplay is so disconnected with Claimant's regular work duties so as to render him nothing more than a "stranger" or "trespasser" with respect to Employer. It would seem that this question should be answered in the negative given that, as previously stated, injuries sustained during horseplay have been found compensable. *General Elec. Co.; Sinko.* Thus, these injuries have previously been found to have occurred in the course of employment as required to ob-

tain benefits consistent with Section 306(c)(1) of the Act.

Nonetheless, Employer argues that a contrary result is required by *Johnson*. In *Johnson*, the claimant (Johnson), a fork lift operator who was also responsible for loading and unloading trucks, filed a claim petition after sustaining injuries upon getting pinned between two fork lifts. The employer (Union Camp) had work rules that mandated that employees stay in their assigned work area, prohibited horseplay, and directed that individuals who engaged in a fight with one another would be subject to suspension and/or discharge. Several lay witnesses testified that Johnson rode his forklift into a separate work area from the one he was assigned in order to discuss a non-work-related subject with another individual. Johnson parked his fork lift in an area that obstructed another worker, Mr. Dykins, who was also riding a fork lift, from performing his duties. The testimony indicated that Mr. Dykins asked Johnson to move his fork lift and that Johnson refused to do so. Consequently, Mr. Dykins attempted to maneuver around Johnson's fork lift and accidentally bumped it. Johnson became angry and jumped at Mr. Dykins' fork lift and somehow became caught causing injury. The WCJ denied Johnson's claim petition finding that he sustained his injuries while violating Union Camp's work rules. This Court affirmed noting that Johnson's actions in jumping on Mr. Dykins' forklift in order to confront him led to his injuries and that he knew of the work-rules he violated. Furthermore, we stated, "[i]t cannot be denied that Claimant's actions of jumping on Mr. Dykins' fork lift to confront Mr. Dykins is something wholly foreign to Claimant's duties of driving his

---

**3.** The WCJ further fails to fully articulate how her finding that Claimant was never punished for his actions impacts the test established in *Johnson*.

fork lift and loading and unloading trucks." *Id.* at 1053.

We believe *Johnson* is distinguishable. Initially, we point out that Johnson was not in his assigned area at the time he sustained his injury. This was a violation of work rules in and of itself. Moreover, Union Camp had work rules prohibiting horseplay and fighting. Nonetheless, benefits were denied based on Johnson's attempt to confront Mr. Dykins. In the present matter, Claimant was in an area he was required to be at the time he sustained his injuries. Additionally, regardless of whether Claimant was injured while being a "victim" of horseplay or an active participant, the testimony of record reveals that the incident in question was mere horseplay. There was joking around with no intent to injure. On the contrary, in *Johnson*, there was an element of hostility taking the case beyond the realm of simple rough-housing. Given the fact that it should be a rare instance when benefits are denied based on an employee's violation of a work rule, *Camino*, we reject Employer's argument that the WCJ erred in granting Claimant's Claim Petition.[4]

We observe that noted commentators on this Commonwealth's workers' compensation jurisprudence concur with the result reached herein stating:

> While an employee's "violation of a positive work order" may exclude the employee from coverage, a standing order or rule that there is "no horseplay" probably does not make otherwise compensable horseplay injuries non-compensable. This would subvert the rule that horseplay on the premises is normally considered in the course of employment.

*See* Torrey and Greenberg, Pennsylvania Workers' Compensation: Law and Practice § 4:87 (2002).

After a review, we conclude that the Board did not err in affirming the WCJ's Order. Accordingly, the Decision of the Board is affirmed.[5]

### ORDER

AND NOW, this 23rd day of January, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

4. Employer asserts that the WCJ failed to reconcile the inconsistencies between Claimant's testimony that "Mr. Cannistraci fell into him" while in his Witness Statement he said Mr. Cannistraci wrestled him to the ground. It argues that at minimum, this case should be remanded for the WCJ to address this inconsistency. Whether Mr. Cannistraci fell into Claimant or attempted to wrestle him to the ground, the overall testimony, and the findings made by the WCJ, establish that Claimant sustained his injury in horseplay. Thus, it is apparent that Claimant would be entitled to benefits in either instance. This fact notwithstanding, we note that Claimant's testimony can easily be read consistent with his Witness Statement. Claimant testified that he essentially was bear-hugged by Mr. Cannistraci and was dragged across the floor. Claimant was released only upon hearing an individual honking and asking them to get out of the way. Upon attempting to walk away was when Mr. Cannistraci fell into him. In his Employee Statement, Claimant indicated "Roberto tried to trip me and/or otherwise wrestle me to the ground." This is not totally unlike being bear-hugged and dragged. Moreover, he indicated "My injury was the sole result of Roberto Cannistraci trying to wrestle me to the ground." Clearly, Mr. Cannistraci would not have fallen into him but for the fact that Mr. Cannistraci initially initiated contact with Claimant.

5. Despite our holding, we do not disagree with Employer that the WCJ's statement that "[i]t was Employer's responsibility to control the conduct and behavior of its employees" is of no legal significance.