IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Stamis, : 
                            : No. 2478 C.D. 2015
               Petitioner : No. 2479 C.D. 2015
                            : Submitted: May 13, 2016
                 v. :
                             :
Workers' Compensation Appeal :
Board (Delaware County :
Intermediate Unit), :
                             :
              Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN           FILED: September 2, 2016

           Angela Stamis (Claimant) petitions for review of the November 19, 2015, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's review and penalty petitions and grant the petition for review of a utilization review (UR) determination (UR petition) filed by Delaware County Intermediate Unit (Employer). We affirm.

           On October 16, 2006, Claimant sustained a work-related, low-back injury in the nature of an aggravation/exacerbation of a pre-existing herniated disc at L5-S1 with radiculopathy. The injury was accepted pursuant to the parties' stipulation, which a WCJ approved on July 24, 2008. On November 18, 2011,

Claimant filed a review petition, seeking to amend the description of her work-related injury to include complex regional pain syndrome (CRPS) and reflex sympathetic dystrophy.[1]  On February 28, 2013, the parties entered a compromise and release agreement (C&R), which resolved the issue of Claimant's future loss of earning power but did not resolve Employer's obligation to pay for Claimant's reasonable and necessary medical treatment for her work-related injury.

On March 18, 2013, John H. Johnson, M.D., performed a UR of Shailen Jalali, M.D.'s treatment of Claimant and concluded that Dr. Jalali's treatment was reasonable and necessary.  On April 3, 2013, Claimant filed a penalty petition, alleging that Employer failed to pay the C&R proceeds in a timely fashion and failed to pay medical bills following a favorable UR determination.  On April 4, 2013, Employer filed a UR petition, seeking review of Claimant's office visits, medications, and medical procedures provided by Dr. Jalali from December 6, 2012, onward.

In the proceedings before the WCJ, Claimant presented the deposition testimony of Dr. Jalali, who is board-certified in anesthesiology and pain management.  During Dr. Jalali's initial examination on February 9, 2012, Claimant presented with low-back and left-leg pain.  (WCJ's Findings of Fact, No. 4.)  Dr. Jalali testified that Claimant did not have a classic presentation of CRPS.  (*Id.*)  He did not observe temperature changes, skin discoloration, skin mottling, or trophic changes.  (*Id.*)  Rather, he observed decreased left-leg strength, limited lumbar range of motion, lumbosacral tenderness, allodynia, dysthesia, and hyperhydrosis.  (*Id.*)

---

[1] Reflex sympathetic dystrophy is now known as CRPS.  (Korevaar Dep., 9/10/12, at 8; Johnson Report, 3/18/13, at 4.)

2

Because Claimant's symptoms could not be explained by objective findings, Dr. Jalali believed that Claimant had a neurological disorder. (*Id.*, No. 5.) Dr. Jalali opined, within a reasonable degree of medical certainty, that Claimant suffered from CRPS and that the CRPS was caused by either the disc herniation or the subsequent disc surgery, both of which stemmed from the work-related injury. (Jalali Dep., 6/28/12, at 16.) He also diagnosed Claimant with lumbar post-laminectomy syndrome, lumber disc degeneration, and spinal stenosis. (*Id.* at 15-16.) Dr. Jalali has been treating Claimant with narcotics, including Fentanyl patches and Oxycodone, since his initial examination in February 2012. (*Id.* at 16-17; WCJ's Findings of Fact, No. 6.) Dr. Jalali is aware that he and Claimant's previous pain management physician have a difference of opinion regarding "pill count," but Dr. Jalali is not concerned with Claimant's use of opioids. (WCJ's Findings of Fact, No. 6.)

Employer presented the deposition testimony of Wilhelmina Korevaar, M.D., who is board-certified in pain management. Dr. Korevaar examined Claimant on May 10, 2012, at which time Claimant reported pain in her entire left leg, her left foot, and her low back. (*Id.*, Nos. 7-8.) During Dr. Korevaar's physical examination, Claimant cried in anticipation of what would happen but not in relation to anything that the doctor did. (*Id.*, No. 9.) Dr. Korevaar observed that Claimant had bloodshot eyes and halting speech, frequently hyperventilated and held her breath, and exhibited symptom magnification. (*Id.*) Claimant did not resist motor testing of the left leg; however, Dr. Korevaar observed that Claimant entered the exam room without issue and was able to bear all of her weight on her left leg. (*Id.*) Dr. Korevaar opined that Claimant did not have CRPS because there was no color or temperature changes of

3

the left foot, swelling of the left foot, hypersensitivity to touch, or atrophy. (*Id.*, No. 10; Korevaar Dep., 9/10/12, at 20-21.) Claimant also exhibited signs of equal use of both legs. (Korevaar Dep., 9/10/12, at 20-21.) Dr. Korevaar testified unequivocally that Claimant had none of the diagnostic indicia of CRPS. (WCJ's Findings of Fact, No. 13.)

After reviewing Claimant's prior treatment records, Dr. Korevaar found that Claimant had not been using her prescribed medications as they were intended to be used. (*Id.*, No. 11.) Specifically, she noted that Claimant's prior treatment at Crozer-Chester Pain Management involved high doses of narcotics, and other records showed inconsistencies in pill counts. (*Id.*) Dr. Korevaar also noted that Claimant had not been wearing the Fentanyl patch as prescribed. (*Id.*) Dr. Korevaar further testified that there "was evidence [that Claimant] had obtained narcotics from [other] physicians," opining that Claimant's behavior was "'an invitation for sudden death.'" (*Id.* (quoting testimony).) Thus, Dr. Korevaar recommended that Claimant be weaned off narcotics as an inpatient and placed on a more appropriate medication regimen. (*Id.*, No. 18; Korevaar Report, 5/10/12, at 6.)

The WCJ noted that in March 2013, Dr. Johnson performed a UR of Dr. Jalali's treatment, particularly his prescription of narcotic medications, and found the treatment to be reasonable and necessary. (WCJ's Findings of Fact, Nos. 13-14; Johnson Report, 3/18/13, at 6.) However, the WCJ concluded that Dr. Johnson's UR determination was flawed because he failed to review earlier treatment records indicating that Claimant had misused narcotics and had been discharged from various physicians' care for misusing narcotics. (WCJ's Findings of Fact, Nos. 11-13.)

4

The WCJ found Dr. Korevaar's testimony credible, unequivocal, and convincing because she relied on objective, clinical findings. (*Id.*, No. 15.) The WCJ also found that Dr. Korevaar's professional qualifications and clinical experience are superior to those of Dr. Jalali. (*Id.*) The WCJ credited Dr. Korevaar's testimony that continued distribution of narcotics to Claimant is neither reasonable nor appropriate and is contrary to good medical practice. (*Id.*, No. 18.) The WCJ specifically discredited Dr. Jalali's diagnosis of CRPS, finding that Dr. Jalali made no objective findings to support a CRPS diagnosis and relied primarily on Claimant's oral history and his own personal feelings. (*Id.*, No. 16.) Moreover, the WCJ found that "even though [Dr. Jalali was] aware of the [C]laimant's difficulties with medications, . . . [he] immediately started [C]laimant on significant narcotic medications 4 days after her disch[a]rge. He either took a poor history or made no attempt to check recent treatment records. Furthermore, he just continues to increase dosage[s]." (*Id.*, No. 17.) Finally, the WCJ determined that Employer paid the C&R proceeds only 5 days beyond the 30-day deadline, which does not warrant an assessment of penalties. (*Id.*, No. 19.)

On April 30, 2014,[2] the WCJ denied Claimant's review petition because Claimant failed to prove that she suffered CRPS as a result of her previously accepted work-related injury. The WCJ also denied Claimant's penalty petition because Claimant failed to prove that Employer's delay in paying the C&R proceeds warranted an assessment of penalties. Finally, the WCJ granted Employer's UR

---

[2] The WCJ issued two identical, written decisions on April 30, 2014, both of which included an order denying Claimant's review and penalty petitions and granting Employer's UR petition.

petition because Employer proved that Dr. Jalali's administration of narcotics to Claimant was neither reasonable nor necessary. Claimant appealed to the WCAB, which affirmed the WCJ's decision. Claimant now petitions this court for review.[3]

### Review Petition

First, Claimant asserts that the WCJ erred in denying her review petition seeking to expand the description of her work-related injury to include CRPS. We disagree.

Under section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772, a WCJ may amend the description of a claimant's work injury if it is materially incorrect or if the claimant's disability status has changed. *ESAB Welding & Cutting Products v. Workers' Compensation Appeal Board (Wallen)*, 978 A.2d 399, 404 (Pa. Cmwlth. 2009). A claimant seeking to amend an accepted injury description has the burden of proving that his or her "disability has increased and that the original work-related injury caused the amending disability." *Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589, 592 (Pa. Cmwlth. 2006) (*en banc*). "Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident." *City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson),* 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011).

---

[3] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated." *Sysco Food Services of Philadelphia v. Workers' Compensation Appeal Board (Sebastiano)*, 940 A.2d 1270, 1273 n.1 (Pa. Cmwlth. 2008).

Here, Claimant's treating physician, Dr. Jalali, testified that Claimant suffered CRPS and that the CRPS was causally related to her work-related injury. However, the WCJ specifically discredited Dr. Jalali's testimony because he did not base his opinion that Claimant suffered from CRPS on objective, clinical findings but relied primarily on the history provided by Claimant and his personal feelings about her symptoms. Conversely, the WCJ credited the testimony of Dr. Korevaar, finding her testimony that Claimant did not have CRPS unequivocal and convincing. The WCJ "may accept or reject the testimony of any witness, including a medical witness, in whole or in part," and "[w]e are bound by the WCJ's credibility determinations." *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267, 272 (Pa. Cmwlth. 2012). Based on the evidence credited by the WCJ, we conclude that Claimant failed to satisfy her burden of proof on the review petition.

Claimant also argues that Dr. Korevaar's testimony was incompetent because she relied on hearsay medical reports that were not introduced into evidence. However, this court has held that a medical expert may base his or her opinion, in part, on the medical reports of others, even if they were not introduced into evidence, as long as they are the kind of records upon which the expert customarily relies in his or her profession. *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Burger)*, 838 A.2d 831, 838 (Pa. Cmwlth. 2003); *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1026 (Pa. Cmwlth. 2000). It was entirely proper for Dr. Korevaar, a pain

7

management expert, to review records from Claimant's prior pain management providers to determine the appropriateness of Claimant's current course of treatment.[4]

Claimant further contends that the WCJ capriciously disregarded Claimant's rebuttal evidence submitted in response to Dr. Korevaar's deposition testimony.[5] Claimant submitted the reports of seven different doctors, all of whom either diagnosed Claimant with CRPS or noted that she had CRPS-type symptoms. (*See* N.T., 2/25/13, Ex. C-4.) Significantly, the rebuttal reports were prepared between June 2007 and March 2009, predating by several years both Dr. Korevaar's examination of Claimant and many of the treatment records on which Dr. Korevaar relied. As such, they were not relevant to Claimant's condition or treatment at the time of Dr. Korevaar's evaluation and opinion in May 2012. It is well settled that a WCJ is not required to make factual findings on all of the evidence presented, but only on such evidence as necessary to resolve the essential issues for meaningful appellate review. *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993). The WCJ did not err in failing to make factual findings regarding Claimant's rebuttal reports.

---

[4] We also note that, at the time of Dr. Korevaar's deposition, Claimant did not object to Dr. Korevaar's reliance on those records.

[5] "'[A] capricious disregard of evidence occurs . . . when the [WCJ] deliberately ignores relevant, competent evidence.'" *Green v. Workers' Compensation Appeal Board (US Airways)*, 28 A.3d 936, 942 (Pa. Cmwlth. 2011) (citation omitted).

## UR Petition

Next, Claimant asserts that the WCJ erred in granting Employer's UR petition because the UR reviewer determined that Dr. Jalali's course of treatment was both reasonable and necessary. We disagree.

In a UR proceeding, the employer has the burden of proving that the challenged medical treatment is unreasonable or unnecessary. *Gary v. Workers' Compensation Appeal Board (Philadelphia School District)*, 18 A.3d 1282, 1288 (Pa. Cmwlth. 2011). In determining the reasonableness and necessity of a prescribed medication, it is appropriate for the UR reviewer to consider the level of risk to the patient. *Bedford*, 51 A.3d at 272. A determination of "'[t]he weight and credibility of the UR report, as with any other evidence, is for the [WCJ as the] fact-finder.'" *Sweigart v. Workers' Compensation Appeal Board (Burnham Corporation)*, 920 A.2d 962, 966 (Pa. Cmwlth. 2007) (citation omitted).

The WCAB's regulations further provide that UR reviewers "shall attempt to obtain records from all providers for the entire course of treatment rendered to the employe for the work-related injury which is the subject of the UR request, regardless of the period of treatment under review." 34 Pa. Code §127.462. "This regulatory scheme clearly contemplates that reviewing doctors assess the reasonableness or necessity of particular treatment *in the context of the entire course of care for the work-related injury*." *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals) (en banc)*, 761 A.2d 1258, 1262 (Pa. Cmwlth. 2000) (emphasis added).

9

Here, the WCJ concluded that Dr. Johnson's UR determination was flawed because he failed to review significant treatment records. (WCJ's Findings of Fact, No. 13.) In particular, Dr. Johnson did not review the record indicating that Dr. Jalali had increased Claimant's dosage of Oxycodone from 120 pills per month to 180 pills per month. (*Id.*) He also failed to review earlier treatment records from Comprehensive Pain Center indicating that Claimant was discharged on November 30, 2011, for misusing Oxycodone. (*Id.*, Nos. 12-13.) Further, the WCJ found:

> Records clearly indicated [Claimant's] use of narcotic medications in a way other than the proper use. Earlier treatment at Crozer-Chester Pain Management had involved high doses of narcotics. Dr. DiGregorio there had attempted to reduce them[,] resulting in a discontinuance of treatment. The next doctor [Claimant] went to declined to renew the prescriptions. The records showed that as of 27 September 2011[,] there were inconsistencies in the narcotic pill counts, there was evidence that [C]laimant had not been wearing the prescribed Fentanyl patch . . . and [there] was evidence she had obtained narcotics from physicians other than those so far named.

(*Id.*, No. 11.) Although Dr. Johnson determined that Dr. Jalali's administration of narcotics was reasonable and necessary to treat Claimant's work-related injury, Dr. Johnson failed to consider the appropriateness of that treatment in the context of Claimant's entire course of care, which indicated misuse and possible abuse of narcotics. (*See* Korevaar Report, 5/10/12, at 5-6.) Therefore, the WCJ and the WCAB properly concluded that Dr. Jalali's treatment was neither reasonable nor necessary.

10

**Penalty Petition**

Finally, Claimant asserts that the WCJ capriciously disregarded evidence establishing that Employer's delay in paying the C&R proceeds was unreasonable. We disagree.

In a penalty proceeding, the claimant bears the burden of proving a violation of the Act on the face of the record. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). An employer's failure to pay the claimant within 30 days of an award of compensation is a violation of the Act. *Varghese v. Workers' Compensation Appeal Board (Ridge Crest Nursing Home)*, 899 A.2d 1176, 1178 n.3 (Pa. Cmwlth. 2006); *see* Section 435 of the Act, 77 P.S. §991.[6] If the WCJ concludes that the employer violated the Act, it is within the WCJ's discretion whether to impose a penalty. *Varghese*, 899 A.2d at 1178 n.3.

In this case, the WCJ approved the parties' C&R on February 28, 2013. Thus, Employer had 30 days from that date, or until April 1, 2013,[7] to pay the settlement proceeds to Claimant. Contrary to Claimant's assertion, it is evident that the WCJ did, in fact, consider Claimant's evidence regarding Employer's payment of the C&R proceeds. The record shows that on April 2, 2013, Employer's counsel sent an email to Claimant's counsel, asking whether Claimant had received the C&R check. (N.T., 7/8/13, Ex. C-3.) Claimant's counsel replied that Claimant had not

---

[6] Added by section 3 of the Act of February 8, 1972, P.L. 25.

[7] Because the 30th day fell on a Saturday, Employer had until Monday, April 1, 2013, to pay the C&R proceeds.

11

received it. (*Id.*) In another April 2, 2013, email, Employer's counsel acknowledged that Employer had mailed the check to Claimant's old address and stated that "a replacement check is being sent out today" to Claimant's counsel's office and that the check should "arrive on Friday, April 5[, 2013]." (*Id.*) Moreover, at the hearing on the penalty petition, Employer's counsel stated that Employer had initially mailed the C&R check to the wrong address and that "when [Employer] realized that, the check came back and we replaced it." (N.T., 5/13/13, at 4.) Therefore, the evidence established that Employer mailed the second C&R check to Claimant's counsel on April 2, 2013.[8] Both the WCJ and the WCAB determined that Employer's delay in paying the C&R proceeds was not unreasonable. We find no abuse of discretion.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[8] In his decision, the WCJ stated that Claimant received the C&R check on April 5, 2013, which is 4 days after the 30-day deadline, not 5 days as the WCJ found. (*See* WCJ's Findings of Fact, No. 19.) As discussed above, however, the evidence showed that Employer mailed the second C&R check on April 2, 2013, which is one day after the deadline. Either way, we agree with the WCJ and the WCAB that Employer's delay in paying the C&R proceeds did not warrant an assessment of penalties under the circumstances.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Stamis,                              :
                                            : No. 2478 C.D. 2015
                    Petitioner              : No. 2479 C.D. 2015
                                            :
            v.                              :
                                            :
Workers' Compensation Appeal                :
Board (Delaware County                      :
Intermediate Unit),                         :
                                            :
                    Respondent              :


O R D E R


AND NOW, this 2<u>nd</u> day of <u>September</u>, 2016, we hereby affirm the November 19, 2015, order of the Workers' Compensation Appeal Board.


_____
ROCHELLE S. FRIEDMAN, Senior Judge