# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prospect Medical Holdings, Inc.,   :
               Petitioner   :
                         :   No. 1135 C.D. 2024
     v.                :
                         :   Submitted: June 3, 2025
Susan Lewis (Workers' Compensation   :
Appeal Board),                   :
               Respondent   :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                        **FILED: July 21, 2025**

Prospect Medical Holdings, Inc. (Prospect) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Respondent Susan Lewis' Petition to Review Compensation Benefits (Review Petition) and Claim Petition for Workers' Compensation (Claim Petition), while also denying Prospect's Petition to Terminate Compensation Benefits (Termination Petition). Upon review, we affirm in part and vacate and remand in part.

# I. BACKGROUND[1]

Lewis is a registered nurse who was employed by Prospect at Delaware County Memorial Hospital (DCMH), where she worked in the emergency department. On March 2, 2021, Lewis injured her left shoulder while assisting a patient, which caused Lewis to suffer pain, soreness, and weakness that extended from her left shoulder down through her left forearm. On March 13, 2021, Prospect issued a Medical Only Notice of Temporary Compensation Payable (Temporary Notice), which acknowledged that Lewis had suffered a strain or tear in her left shoulder. Lewis was put on light duty, which consisted of working in DCMH's COVID vaccination clinic, and began physical therapy on March 18, 2021.

While Lewis' forearm pain quickly improved, her shoulder issues remained. On March 31, 2021, Lewis was referred for treatment to Dr. Richard Zamarin at Premier Orthopedics, who ordered an MRI and gave her two cortisone shots over the ensuing months; those shots only provided temporary relief that lasted for between four and six weeks each time. Dr. Zamarin released Lewis to full work duty on April 23, 2021, whereupon she returned to her pre-injury position at DCMH.

Lewis subsequently resigned from DCMH and moved to Mississippi in July 2021, where she began working as a registered nurse at the University of Mississippi Medical Center's (UMMC) emergency department in October 2021. Upon her arrival in Mississippi, Lewis sought medical treatment for her unresolved shoulder issues, but was unable to find practitioners who would accept her private insurance or her Pennsylvania workers' compensation coverage; as a result, she received no treatment for her shoulder injury for roughly 10 months after her

---

[1] We draw this section's substance from the Board's opinion, as well as the WCJ's written decision. *See generally* Bd.'s Op., 8/2/24; WCJ's Decision, 7/7/23.

relocation. Lewis eventually resigned from UMMC on March 24, 2022, in lieu of termination, due to the fact that she was physically unable to perform her job duties.

She then returned to Pennsylvania, where her shoulder was evaluated by Dr. Joseph Abboud at Rothman Orthopedics on May 6, 2022. Dr. Abboud reviewed the original MRI, which he interpreted as showing a partial tear of Lewis' left rotator cuff. He then ordered a second MRI, which he interpreted as showing injuries that were similar to those shown in the first MRI, and recommended that Lewis have surgery to repair the tear. Lewis accepted this suggestion, whereupon Dr. Abboud surgically repaired her left rotator cuff on June 9, 2022. She then returned to Mississippi after a brief period of convalescence, where she began receiving post-operative physical therapy.

This injury prompted both Lewis and Prospect to seek additional relief pursuant to the Workers' Compensation Act (Act).[2] On May 25, 2022, Lewis filed her Review Petition, in which she requested that the description of her injury be amended to specifically state that she had suffered a left rotator cuff tear. She then filed her Claim Petition on July 22, 2022, through which she sought total disability benefits for her injury. Prospect then filed its Termination Petition on September 23, 2022, in which it alleged that Lewis had fully recovered from her injury as of September 2, 2022, based upon an independent medical evaluation (IME) of Lewis and record review that had been performed by Dr. Robert Grob.

A hearing was held before a WCJ on January 23, 2023, who thereafter issued a decision on July 17, 2023, granting the Claim and Review Petitions, while also denying the Termination Petition; in doing so, the WCJ ruled that Lewis had established that she had torn her left rotator cuff on March 2, 2021, while working

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

3

at DCMH; was rendered totally disabled as of May 6, 2022; and was entitled to disability benefits in the amount of $786.43 per week from that date onwards. Prospect appealed the WCJ's decision to the Board, which affirmed on August 2, 2024.

## II. DISCUSSION[3]

Prospect presents several arguments for our consideration, through which it asserts that the Board improperly affirmed the WCJ's decision. We summarize these arguments as follows. First, the WCJ's determination that Lewis had suffered a work-related, acute rotator cuff tear on March 2, 2021, was based upon incompetent and equivocal evidence, rather than substantial competent evidence, and constituted a capricious disregard of competent evidence to the contrary. Prospect's Br. at 22-29. Second, the WCJ erred and abused her discretion by denying the Termination Petition, because that petition was supported by Dr. Grob's unrefuted testimony regarding his belief that Lewis had fully recovered from her injury. *Id.* at 29-32. Finally, the WCJ erred and abused her discretion by awarding Lewis total disability benefits, because she failed to properly consider that Lewis' loss in earning power was caused by her resignation from DCMH and subsequent relocation to Mississippi. *Id.* at 33-36.

We are unpersuaded by Prospect's first argument. In workers' compensation matters, the WCJ has exclusive authority to weigh evidence and make credibility determinations, which cannot be disturbed if they are supported by substantial evidence. *City of Phila. v. Healey*, 297 A.3d 872, 882 (Pa. Cmwlth.

---

[3] When considering an appeal from a Board order, our review "is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] and whether the necessary findings of fact are supported by substantial evidence." *Gen. Motors Corp. v. Workers' Comp. Appeal Bd. (McHugh)*, 845 A.2d 225, 228 n.2 (Pa. Cmwlth. 2004) (citing 2 Pa. C.S. § 704).

4

2023). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This is but another way to state that information admitted into evidence must have sufficient indicia of reliability and be relevant to the matter under consideration." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943-44 (Pa. 2004).

Furthermore, evidence must be competent in order to be substantial, in that the proffered medical evidence must unequivocally establish a connection between the claimant's condition and the injury they suffered while at work. *Fessler by Fessler v. Workers' Comp. Appeal Bd. (Nationwide Ins. Co.)*, 484 A.2d 422, 425 (Pa. Cmwlth. 1984). "Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists[,]" but will be deemed "equivocal if, after a review of a medical expert's entire testimony, it is found to be merely based on possibilities." *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "[T]here are no 'magic words' a medical expert must say to establish causation and reviewing bodies are not permitted to pick one or two sentences out of context – rather, the testimony as a whole must contain a requisite level of certainty necessary to deem it unequivocal." *Moyer v. Workers' Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009).

"[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi v.*

*Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). "Thus, this Court's authority in these matters is limited to reviewing the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence." *Dep't of Corr. - SCI Chester v. Faison*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021). When considering whether a WCJ's ruling is supported by substantial evidence, "this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the fact-finder's decision in favor of that prevailing party." *Wawa v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008) (cleaned up).

Furthermore, we may conclude that a WCJ capriciously disregarded evidence only in a situation where that evidence is "apparently trustworthy" and the WCJ's disregard of that evidence was "deliberate and baseless[.]" *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). "[W]here there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 488 (Pa. 2002).

In this instance, the record supports the WCJ's determination that Lewis established that she suffered a work-related left rotator cuff tear on March 2, 2021.[4]

---

[4] "In a claim petition, the burden of proving all necessary elements to support an award rests with the claimant." *Sysco Food Servs. of Philadelphia v. Workers' Comp. Appeal Bd. (Sebastiano)*,

6

Dr. Abboud testified that he reviewed Lewis' first MRI, which had been taken shortly after her shoulder injury at DCMH, and concluded that it showed a partial left rotator cuff tear. Abboud Dep. Tr., 10/17/22, at 9-10. He also stated that he conducted a physical examination of Lewis on May 6, 2022, during which she complained of severe, persistent shoulder pain dating back to the March 2, 2021 incident, and had her undergo a second MRI, which also showed a partial left rotator cuff tear. *Id.* at 10-11. Additionally, Dr. Abboud explained that his suspicions were confirmed during Lewis' subsequent surgical procedure, during which he both corroborated the tear and repaired it by reattaching the affected shoulder tendon to the bone. *Id.* at 13. Finally, Dr. Abboud testified that he believed that the treatment he gave Lewis was directly related to the injury she suffered on March 2, 2021. *Id.* at 16-17, 21. Dr. Abboud's testimony therefore reflects his unequivocal opinion that Lewis tore her left rotator cuff as a result of the March 2, 2021 incident and, thus, constitutes substantial competent evidence that backs the WCJ's conclusion to that effect. *Campbell* 954 A.2d at 730; *Fessler*, 484 A.2d at 425; *Moyer*, 976 A.2d at 599.

Prospect nevertheless asserts that the WCJ's determination on this point was predicated upon a capricious disregard of evidence. Specifically, Prospect maintains that the record contains evidence that the WCJ ignored regarding five critical points. First, Lewis was released back to normal work duty within a month of the March 2, 2021 incident. Second, her first MRI, which was taken in April 2021, did not show a rotator cuff tear. Third, Lewis was no longer complaining of shoulder pain as of May 2021. Fourth, Lewis did not exhibit signs of a tear during

940 A.2d 1270, 1274 (Pa. Cmwlth. 2008). The same burden of proof rests upon a claimant who files a review petition. *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007).

7

a clinical exam that took place in July 2021, just prior to her relocation to Mississippi. Finally, Lewis continued to perform normal work duties between May 2021 and April 2022. Prospect's Br. at 28-29. We disagree, as these points simply reflect that Prospect would interpret, credit, or highlight various portions of the record evidence in a different manner than that chosen by the WCJ. Moreover, they essentially speak to Prospect's disagreement with the WCJ's credibility findings regarding Lewis' testimony, specifically about the waxing and waning of her symptoms and her strong desire to keep working despite the pain, as well as Dr. Abboud's testimony as to the cause and nature of Lewis' injury. *See* WCJ's Decision, Findings of Fact (F.F.), ¶¶2-3, 8, 13-14; *id.*, Conclusions of Law (C.L.), ¶¶2, 4. Given this, as well as the aforementioned substantial record evidence, we cannot conclude that the WCJ capriciously disregarded evidence regarding the cause and nature of Lewis' shoulder injury. *Williams*, 862 A.2d 137, 144; *Wintermyer,* 812 A.2d at 488.

Next, we are somewhat persuaded by Prospect's second argument, as the WCJ did not properly justify her denial of the Termination Petition.[5] Prospect argues that the WCJ capriciously disregarded Dr. Grob's unrefuted testimony that Lewis had fully recovered from her rotator cuff injury as of September 2, 2022, and, therefore, erroneously denied its Termination Petition. Prospect's Br. at 29-32. Prospect points out that Dr. Grob's determination was based upon the IME he personally conducted of Lewis on September 2, 2022, as well as that Dr. Abboud evaluated Lewis' health remotely on July 29, 2022, and August 26, 2022, but did not

---

[5] "To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury. The burden is substantial since disability is presumed to continue unless and until proved otherwise." *Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1289 (Pa. Cmwlth. 2016) (cleaned up).

perform an in-person evaluation of Lewis after June 2022. In Prospect's view, Dr. Grob's full recovery determination was thus not contradicted by Dr. Abboud's testimony, and therefore was not rejected by the WCJ, because Dr. Abboud did not possess the requisite knowledge to competently speak to the state of Lewis' rotator cuff injury as of September 2022. *Id.* at 30-31.

We are unable to fully address the merits of this argument, due to deficiencies in both the record and the WCJ's analysis. During the course of his deposition, Dr. Abboud explained that an individual's return to full work duty after undergoing the kind of rotator cuff procedure he performed on Lewis is dictated by the nature of the work they perform. Abboud Dep. Tr., 10/17/22, at 41-42. While individuals who have sedentary jobs can usually return to work within two to three weeks of the procedure, that is not the case for more physically demanding positions. *Id.* at 41. In Dr. Abboud's opinion, "[i]f someone does a job that involves pushing, pulling, and lifting, especially a patient, where there's patient safety involved, [they cannot usually return to work] before at the earliest five months." *Id.* Dr. Abboud also stated that, in his experience, nurses fall within that latter category, as they "won't be able to return to work at a full-duty capacity before five months because most nursing jobs will not make accommodations for you." *Id.* at 41-42. Furthermore, he discussed how he conducted a telehealth visit with Lewis on August 26, 2022, during which Lewis described the state of her left shoulder, and consequently declined to release her to full work duty. *See id.* at 21, 38-39. In short, Dr. Abboud's determination that Lewis was still unable to return to work as of her August follow-up visit was based upon his professional expertise, as well as his interpretation of Lewis' self-reported symptoms two-and-one-half months out from surgery. The WCJ considered Dr. Abboud's testimony and found him fully credible

9

"regarding [the] diagnosis of [Lewis'] left shoulder condition, her need for surgery, and [her] associated disability[,]" while also finding Dr. Grob's testimony not credible to the extent it conflicted with Abboud's. WCJ's Decision, F.F., ¶¶14-15.

In doing so, the WCJ failed to grapple with critical ambiguities in the record. Dr. Abboud flatly stated that he had not given Lewis permission to return to work as of August 26, 2022. Again, however, he *also* expressed his belief later on that, generally speaking, individuals can return to sedentary jobs within two to three weeks, but that nurses cannot do so "at a full-duty capacity before five months because most nursing jobs will not make accommodations for you." *See* Abboud Dep. Tr., 10/17/22, at 21, 41-42. It is undisputed in this instance, though, that DCMH would have allowed Lewis to perform sedentary work for at least 90 days after her March 2, 2021 injury, and would have then reevaluated her after that time period had elapsed, although it is unclear what the reevaluation would have entailed. *See* WCJ's Decision, F.F., ¶7 (summarizing deposition testimony from Vera Kunkel, Prospect's workers' compensation injury counselor).[6] It is thus unclear whether Dr. Abboud would agree with Dr. Grob's recovery assessment, insofar as the timing of Lewis' ability to return to light duty at DCMH after her rotator cuff surgery.

We similarly agree to an extent with Prospect's final argument, as the WCJ did not properly substantiate her conclusion that Lewis was entitled to total

---

[6] Lewis testified that she received the same pay for the sedentary work that she performed in the wake of her March 2, 2021 injury as she would have for her normal position, minus an approximately three-dollar shift differential. WCJ's Decision, F.F., ¶2. In addition, Kunkel testified that Lewis would have continued to earn her pre-injury wages, regardless of whether she was performing sedentary or active duties, had she not resigned from her position at DCMH. *Id.*, F.F., ¶7. At minimum, Kunkel's testimony theoretically implies that Prospect would have allowed Lewis to work in a less physically demanding capacity at DCMH after her rotator cuff surgery. The WCJ, however, found Kunkel incredible to the extent her testimony conflicted with Lewis' and also labelled Kunkel's testimony "largely irrelevant[.]" *Id.*, F.F., ¶17.

10

disability benefits. As just discussed, the WCJ found Dr. Abboud to be credible regarding the extent of Lewis' post-surgical disability. *Id.*, F.F., at ¶14. On that basis, the WCJ concluded that Lewis had shown that she was totally disabled from the date of her surgery onwards and was consequently entitled to total disability benefits in the amount of $786.43 per week. *Id.*, F.F., ¶19; *id.*, C.L., ¶¶2-3. As with the Termination Petition, however, the WCJ failed to address the aforementioned factual ambiguities before disposing of Lewis' Claim Petition.

Two important questions thus remain unanswered. First, did Dr. Abboud's opinion that Lewis was unable to return to work as of August 26, 2022, encompass *all* duties which she could have performed at DCMH post-operatively, or was that opinion based upon his lack of awareness regarding her eligibility to perform light or sedentary duties at DCMH? Second, would Prospect have potentially allowed Lewis to perform light duty at DCMH until she received full post-surgical medical clearance to return to her regular duties and, if so, what would she have had to show at her 90-day reevaluation in order to secure such dispensation? Without answers to these questions, we cannot determine whether the WCJ properly concluded that Lewis was fully disabled as of May 6, 2022, whether the WCJ also correctly determined that Lewis was entitled to total disability benefits in the amount of $786.43 per week, or whether Lewis had fully recovered from her surgery as of September 2, 2022. A remand is therefore necessary, so that these questions can be adequately answered. *See DiLaqua v. City of Phila. Fire Dep't*, 268 A.3d 1, 14 (Pa. Cmwlth. 2021) (remand is warranted in instances where the WCJ failed to properly address key issues of fact and/or law, so as to allow the WCJ to correct their error and facilitate appropriate appellate review); *Samuel J. Lansberry, Inc. v. Workers' Comp. Appeal Bd. (Switzer)*, 649 A.2d 162, 164-65 (Pa. Cmwlth. 1994) (remand is

appropriate when "[t]he [WCJ] had failed to make findings on a crucial issue, necessary for the proper application of the law"); *A&P Tea Co. v. Workers' Comp. Appeal Bd. (Giglio)*, 539 A.2d 51, 53 (Pa. Cmwlth. 1988) (remand to WCJ is proper if factual issues remain on appeal that need to be clarified or resolved).

### III. CONCLUSION

We affirm the Board's adjudication in part, to the extent that the Board granted Lewis' Review Petition. *See Degraw*, 926 A.2d at 1000. In addition, we vacate the adjudication in part, to the extent the Board granted Lewis' Claim Petition and denied Prospect's Termination Petition. *See Baumann*, 147 A.3d at 1289; *Sysco*, 940 A.2d at 1274. Accordingly, we remand this matter in part to the Board, with instructions that it further vacate the WCJ's decision in part, as to the Claim Petition and Termination Petition, and remand in part to the WCJ. *See A&P*, 539 A.2d at 53; *DiLaqua*, 268 A.3d at 14; *Lansberry*, 649 A.2d at 164-65. We further direct the Board to instruct the WCJ to properly determine on remand whether Lewis was totally disabled as of May 6, 2022, as well as the duration of any such total disability, the benefits (if any) that Lewis was entitled to as a result of the disability and/or the pay differential between her normal job duties at DCMH and any available sedentary work, and whether Lewis had fully recovered from her rotator cuff surgery as of September 2, 2022. The Board shall also instruct the WCJ to issue a supplemental decision regarding the Claim Petition and the Termination Petition that is in accordance with the foregoing analysis and, if necessary, relies upon the WCJ's consideration of additional evidence from the parties.

**LORI A. DUMAS, Judge**

Judge Fizzano Cannon did not participate in this decision.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prospect Medical Holdings, Inc., :
                Petitioner :
                          :   No. 1135 C.D. 2024
          v. :
                          :
Susan Lewis (Workers' Compensation :
Appeal Board), :
                Respondent :

## **O R D E R**

AND NOW, this 21st day of July, 2025, it is hereby ORDERED:

1. The Workers' Compensation Appeal Board's (Board) August 2, 2024 order is AFFIRMED IN PART, to the extent that order affirmed the workers' compensation judge's (WCJ) July 17, 2024 decision (Decision) to grant Petitioner Susan Lewis' (Lewis) Petition to Review Compensation Benefits;

2. The Board's August 2, 2024 order is VACATED IN PART, to the extent that order affirmed the WCJ's Decision to grant Lewis' Claim Petition and deny Respondent Prospect Medical Holdings, Inc.'s (Prospect) Petition to Terminate Compensation Benefits (Termination Petition);

3. This matter is REMANDED IN PART to the Board, with instructions that the Board further vacate the WCJ's Decision in part, as to the WCJ's granting of Lewis' Claim Petition and denial of Prospect's Termination Petition, and remand in part to the WCJ;

4. We further direct the Board to instruct the WCJ to properly determine on remand whether Lewis was totally disabled as of May 6, 2022, as well as the duration of any such total disability, the benefits (if any) that Lewis was entitled to

as a result of the disability and/or the pay differential between her normal job duties at DCMH and any available sedentary work, and whether Lewis had fully recovered from surgery on her left rotator cuff as of September 2, 2022. The Board shall also instruct the WCJ to issue a supplemental decision adjudicating the Claim Petition and the Termination Petition that is in accordance with the foregoing analysis and, if necessary, relies upon the WCJ's consideration of additional evidence from the parties.


**LORI A. DUMAS, Judge**